UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**NESTOR BELTRAN,**

   Plaintiff,

v.                                       No. 4:24-cv-00675-P

**LOCKHEED MARTIN CORP.,**

   Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is the Parties' briefing regarding whether an issue decided by an arbitrator should have preclusive effect in this case. ECF Nos. 48, 49, 52. Having reviewed the Parties' briefing and the applicable law the Court finds that the arbitrator's decision will have no preclusive effect in this case.

### BACKGROUND

The above numbered and styled case was filed on February 2, 2024, in the United States District Court for the District of Maryland. On July 18, 2024, the case was transferred to this Court. On August 7, 2024, Plaintiff filed an Amended Complaint, which is the live pleading in this case. Subsequently, the Parties filed a joint motion to stay the case pending the resolution of a related arbitration. On October 14, 2024, the Parties filed a joint notice indicating to the Court that the arbitration proceeding had concluded and informing the Court of their disagreement regarding the effect of the arbitrator's determination on the issues in this case. Based on that notice, the Court ordered the Parties to fully brief their positions.

Plaintiff Nestor Beltran alleges three causes of action against Defendant Lockheed Martin Corporation ("Lockheed"): (1) Retaliation under Section 828 of the 2013 National Defense Authorization Act, 41 U.S.C. § 4712 *et seq*. ("NDAA"); (2) Discrimination under Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII"); and (3) Retaliation under Title VII. Beltran's claims against Lockheed arise out of series of incidents that occurred between March 2022 and March 2023, which culminated in his termination from Lockheed in May 2023. While Beltran's Amended Complaint references multiple incidents in support of his claims for retaliation and discrimination, the arbitration mainly focused on two of those incidents.

The first incident occurred on or about December 13, 2022, when Beltran, a mechanical inspector, identified issues with an aircraft's battery and notified Lockheed's production department. Beltran's supervisor, Mike Mahaffey, ordered Beltran to correct the issue. Beltran responded to Mahaffey's request by telling him that the issue needed to be addressed by "avionics personnel" and not by a mechanical inspector. Mahaffey insisted that Beltran complete the task because it was within his purview. Beltran responded that Mahaffey was wrong, and he would only do the work if he was issued an "Avoid Verbal Order" ("AVO"), which would authorize him to perform work outside of his skill set. Mahaffey informed Beltran that he would not issue an AVO, and again ordered Beltran to complete the task. Beltran again refused and Mahaffey had Beltran escorted off of company property for insubordination and refusal to work. That incident resulted in Beltran receiving a five-day suspension.

The second incident occurred on or about March 22, 2023, when Willie Willborn ordered Beltran to complete a task involving the inspection of an electronic connector. Beltran rejected the task on the basis that it should be assigned to avionics personnel and was thus outside the tasks his job required him to perform. Willborn again sent Beltran a work order to complete the task. Beltran again rejected the task, but this time on the grounds that the task needed to be assigned to an electronics inspector. Willborn then submitted a third work order and Beltran again rejected it. After Beltran's third rejection, Willborn contacted the relevant supervisors, and Mahaffey went to Beltran's station.

When Mahaffey arrived, Beltran refused to speak with Mahaffey privately because he wanted witnesses to the conversation. Mahaffey

then asked Beltran to go look at the aircraft with him. Beltran refused to go with Mahaffey and stated that the task was outside of his job purview. In response, Mahaffey informed Beltran that if he looked at the work order he would see that the task was within his job responsibilities. Despite Mahaffey's insistence, Beltran continued to refuse the task and, as he had done previously, demanded that Mahaffey issue an AVO. In response, Mahaffey read from a script that human resources had provided him, informing Beltran that the task was within his job classification and giving him a direct order to perform the task. Mahaffey also informed Beltran that if he refused the direct order he would be removed by security for insubordination and subject to discipline, up to and including termination. Beltran again refused the task and Mahaffey had him escorted off of the property by security. Ultimately, this incident led to Beltran's termination from Lockheed.

At the arbitration, District Lodge 776 (the "Union")—who brought the arbitration proceeding on Beltran's behalf—argued that Lockheed had violated the parties' collective bargaining agreement ("CBA") by suspending and terminating Beltran based on the aforementioned incidents. Specifically, the Union asserted, as Beltran does in his Amended Complaint, that the tasks assigned to Beltran were outside of his job duties and he properly refused to do them without an AVO. After reviewing the parties' arguments, the CBA, and the relevant evidence, the arbitrator concluded that the five-day suspension was reasonable even though Beltran may have genuinely believed the job was outside the purview of his position and his request for an AVO was appropriate. Additionally, the arbitrator found that Beltran's actions in March 2023 amounted to insubordination and his termination was justified under the circumstances. The Parties now dispute whether collateral estoppel should apply to the arbitrator's decisions on those issues in this case.

## LEGAL STANDARD

The decision to apply issue preclusion is committed to the Court's discretion. *Carter v. Transp. Workers Union of Am., Loc. 556*, 602 F. Supp. 3d 956, 966 (N.D. Tex. 2022) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974); *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014); *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 643

3

(5th Cir. 1985)). The Court considers several factors, including the facts and circumstances of the case, the federal interests warranting protection, whether the findings were within the arbitrator's expertise and experience, whether the arbitration adequately protected the parties' rights, and the adequacy of the record considered by the arbitrator. *Id.* (citing *Gardner-Denver Co.*, 415 U.S. at 60 n.21; *Grimes*, 746 F.3d at 188; *Gonzalez*, 773 F.2d at 643). To the extent that the arbitrator's findings represent legal "issues" in the typical collateral-estoppel sense, the bar is much higher: an issue will be precluded only if "'(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" *Id.* (quoting *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 548 (5th Cir. 2013)); *see also Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

## ANALYSIS

Beltran raises four arguments for why issue preclusion should not apply in this case: (1) the parties in this matter are different; (2) the issues presented are not identical to those of the arbitration; (3) the issues have not been thoroughly litigated; and (4) the findings of the arbitration are neither material nor relevant to this case. ECF No. 48 at 5–13. For the reasons set out below, the Court disagrees with Plaintiff on two of his points but ultimately finds that precedent requires a denial of issue preclusion in this case.

### A. The Privity of the Parties

Beltran first argues that the parties to the arbitration are different from the Parties in this matter. Specifically, Beltran asserts that the arbitration decision cannot have any preclusive effect on his claims against Lockheed Martin Corporation because the arbitration was between Lockheed Martin Aeronautics Company—Fort Worth and IAMAW, District Lodge 776. ECF No. 48 at 5–8. Beltran seemingly concedes the fact that Lockheed Martin Corporation and Lockheed

4

Martin Aeronautics Company—Fort Worth are in privity.[1] *Id.* at 6–7. However, Beltran contests that he was not in privity with the Union because, in addition to the remedies he was seeking, the Union sought clarification on company policies. *Id.*

Privity has been described as nothing more than a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Sw. Airlines, Inc. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (citation omitted). Privity exists where, for example, a party's claim is derivative of the original party's claim. *See Terrell v. DeConna*, 877 F.2d 1267, 1270–73 (5th Cir. 1989) (holding that a wife bringing a loss-of-consortium claim cannot relitigate issues that had been decided in her husband's personal injury suit); *Meador v. Oryx Energy Co.*, 87 F. Supp. 2d 658, 665 (E.D. Tex. 2000) (finding that where two estate beneficiaries were "in privity with their common ancestor for a claim belonging to that ancestor, it follows that they are also in privity with each other").

Union members can be considered to be in privity with their unions for purposes of collateral estoppel. *Hitchens v. Cnty. of Montgomery*, 98 Fed. App'x 106, 114 (3d Cir. 2004). An employee and his union are considered in privity when the union adequately represented the employee's interests in the prior litigation. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266–67 (5th Cir. 1990). An employee was adequately represented by their union when: (1) the interest of the employee and the union are aligned; (2) either the Union understood itself to be acting in a representative capacity or the arbitrator took care to protect the employee's interests; and (3) the employee had notice of the arbitration. *See Taylor v. Sturgell*, 553 U.S. 880, 900 (2008).

In this case, the Union brought the arbitration on Beltran's behalf after he filed two grievances. In those grievances Beltran claimed that he had been harmed and that he was entitled to relief. ECF Nos. 48-1,

---

[1]If the Court has incorrectly determined that Beltran concedes this point, the Court alternatively finds that Lockheed Martin Corporation and Lockheed Martin Aeronautics Company–Fort Worth are in privity.

48-2. Further, in both grievances, Beltran "irrevocably authorize[d]" the Union to "represent [him] with full rights to settle, compromise or withdraw" the grievance. *Id.* Thus, the Court finds the second and third elements are satisfied because Beltran had notice of the arbitration and the language within the grievances makes clear that the Union understood itself to be acting in a representative capacity for Beltran. While Beltran asserts that the Union's interests do not align with his because they sought an additional remedy, the Court disagrees. In the arbitration, the Union sought to have Beltran reinstated with backpay and to have his disciplinary record expunged. In addition, the Union sought to have the policies that served as Beltran's defense to the insubordination charges clarified. It is nonsensical to say that the Union and Beltran's interests were not aligned because the Union sought to have the policies clarified in addition to the remedies he sought. For this Court to hold otherwise would ensure two bites at the apple for all employees whose unions bring arbitration proceedings on their behalf. The Court declines to do so and finds that the Parties were in privity.

### B. Materiality and Relevancy of the Findings

Beltran next argues that the arbitrator's findings are neither relevant nor material to this case. That assertion is plainly wrong and meritless. At the arbitration, as he does here, Beltran asserted that he was not insubordinate because his supervisor refused to issue an AVO, and the tasks fell outside the scope of his job duties. The arbitrator rejected these arguments and found that Beltran was insubordinate. While, as discussed below, the burdens of proof and elements of the actions are different, a finding of insubordination is directly relevant to Beltran's Title VII and NDAA claims. Therefore, the Court finds that the findings were essential in the arbitration and are material and relevant to this case.

### C. The Issues

Finally, the Court turns to Beltran's assertion that the arbitrator's findings should not be given preclusive effect because the issues are different and were not litigated during the arbitration. While arbitrators may be "competent to resolve many preliminary factual questions, such

6

as whether the employee 'punched in' when he said he did," they are not competent to resolve the ultimate legal questions of a case. *Carter*, 602 F. Supp. at 966 (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)). Additionally, the legal questions that the arbitrator was faced with are not the same as the ones presented in this federal case. The arbitrator found that Lockheed had just cause under the CBA to terminate Beltran's employment. In contrast, Beltran's claims in this suit—Title VII and NDAA—involve markedly different legal standards. In fact, regarding whether issue preclusion should apply to a Title VII case, the Supreme Court has stated:

> Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever [be] mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum.

*Gardner-Denver*, 415 U.S. at 60 n.21.

In this case, the arbitrator was not faced with Beltran's claims of retaliation or race-based discrimination, nor was he faced with deciding whether Beltran was Insubordinate in light of those allegations. While it appears that Lockheed has good evidence that its firing of Beltran was not retaliation or discrimination, and Beltran's claims appear to be weak at best, that determination must be made in light of all the evidence and arguments that were not presented to the arbitrator. While this case may very well be dismissed at the summary judgment stage, Beltran should be given the opportunity to show that—in spite of what appears to be compelling evidence to the contrary—his termination was not above board. Consequently, based on the above, the Court will not give the arbitrator's finding preclusive effect.

## CONCLUSION

For the reasons set out above, the Court will not apply issue preclusion to the findings of the arbitrator. It is **ORDERED** that this

7

case, which was previously abated pending the resolution of the arbitration, be reopened. The Court looks forward to Lockheed's summery judgment briefing.

**SO ORDERED** on this **18th day of December 2024.**

_____
MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE