UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**NESTOR BELTRAN,**

   Plaintiff,

v.   No. 4:24-cv-00675-P

**LOCKHEED MARTIN CORP.,**

   Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the Defendant Lockheed Martin Corporation's ("Lockheed") Motion for Summary Judgment. ECF No. 61. Having reviewed the briefing, evidence, and applicable law, the Court will **GRANT** Lockheed's Motion.

## BACKGROUND

The above numbered and styled case was filed on February 2, 2024, in the United States District Court for the District of Maryland. On July 18, 2024, the case was transferred to this Court. On August 7, 2024, Plaintiff filed an Amended Complaint, which is the live pleading in this case. Plaintiff Nestor Beltran alleges three causes of action against Lockheed ("Lockheed"): (1) Retaliation under Section 828 of the 2013 National Defense Authorization Act, 41 U.S.C. § 4712 *et seq*. ("NDAA"); (2) Discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII"); and (3) Retaliation under Title VII. Beltran's claims against Lockheed arise out of series of incidents that occurred between March 2022 and March 2023, which culminated in his termination from Lockheed in May 2023. While Beltran's Amended Complaint references multiple incidents in support of his claims for retaliation and discrimination, the pled adverse employment actions are based on two of those incidents.

The first incident occurred on or about December 13, 2022, when Beltran, a mechanical inspector, identified issues with an aircraft's battery and notified Lockheed's production department. Beltran's supervisor, Mike Mahaffey, ordered Beltran to correct the issue. Beltran responded to Mahaffey's request by telling him that the issue needed to be addressed by "avionics personnel" and not by a mechanical inspector. Mahaffey insisted that Beltran complete the task because it was within his purview. Beltran responded that Mahaffey was wrong, and he would only do the work if he was issued an "Avoid Verbal Order" ("AVO"), which would authorize him to perform work outside of his skill set. Mahaffey informed Beltran that he would not issue an AVO, and again ordered Beltran to complete the task. Beltran again refused and Mahaffey had Beltran escorted off of company property for insubordination and refusal to work. That incident resulted in Beltran receiving a five-day suspension.

The second incident occurred on or about March 22, 2023, when Willie Willborn ordered Beltran to complete a task involving the inspection of an electronic connector. Beltran rejected the task on the basis that it should be assigned to avionics personnel and was thus outside the tasks his job required him to perform. Willborn again sent Beltran a work order to complete the task. Beltran again rejected the task, but this time on the grounds that the task needed to be assigned to an electronics inspector. Willborn then submitted a third work order and Beltran again rejected it. After Beltran's third rejection, Willborn contacted the relevant supervisors, and Mahaffey went to Beltran's station.

When Mahaffey arrived, Beltran refused to speak with Mahaffey privately because he wanted witnesses to the conversation. Mahaffey then asked Beltran to go look at the aircraft with him. Beltran refused to go with Mahaffey and stated that the task was outside of his job purview. In response, Mahaffey informed Beltran that if he looked at the work order he would see that the task was within his job responsibilities. Despite Mahaffey's insistence, Beltran continued to refuse the task and, as he had done previously, demanded that Mahaffey issue an AVO. In response, Mahaffey read from a script that Lockheed's

2

human resources department had provided him, informing Beltran that the task was within his job classification and giving him a direct order to perform the task. Mahaffey also informed Beltran that if he refused the direct order he would be removed by security for insubordination and subject to discipline, up to and including termination. Beltran again refused the task and Mahaffey had him escorted off the property by security. Ultimately, this incident led to Beltran's termination from Lockheed two months later.

On August 7, 2024, the Parties filed a Joint Motion to Stay Pending Resolution of Related Arbitration, which the Court granted. On September 13, 2024, the Parties notified the Court that the arbitration had concluded. At the arbitration, District Lodge 776 (the "Union")—which brought the arbitration proceeding on Beltran's behalf—argued that Lockheed had violated the parties' collective bargaining agreement ("CBA") by suspending and terminating Beltran based on the aforementioned incidents. Specifically, the Union asserted, as Beltran does in his Amended Complaint, that the tasks assigned to Beltran were outside of his job duties and Beltran properly refused to do them without an AVO. After reviewing the parties' arguments, the CBA, and the relevant evidence, the arbitrator concluded the five-day suspension was reasonable even though Beltran may have genuinely believed the job was outside the purview of his position and his request for an AVO was appropriate. Additionally, the arbitrator found that Beltran's actions in March 2023 amounted to insubordination and his termination was justified under the circumstances.

Subsequently, the Parties briefed, and the Court ruled on, whether the arbitration should have preclusive effect in this case. ECF Nos. 48, 49, 52, 54. After finding that precedent required the Court to find that the arbitration had no preclusive effect in this case, the Court placed the Parties on a schedule. ECF No. 55. Lockheed filed its Motion for Summary Judgment on May 2, 2025. ECF No. 61. The Parties have briefed their positions, and that Motion is ripe for review.

3

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect the case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *See First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence of record, but it need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). And the Court need not mine the record to find evidence to support the non-movant; the burden falls on the movant to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Lockheed moves for summary judgment on all three of Beltran's claims. ECF No. 61. Beltran opposes summary judgment and asserts there are material disputes of fact which necessitate the denial of Lockheed's Motion. ECF No. 65. For the reasons set out below, the Court holds that Lockheed is entitled to summary judgment on all of Beltran's claims.

### A. Title VII Discrimination Claim

Lockheed moves for summary judgment on Beltran's Title VII Discrimination claim on two grounds. ECF No. 62 at 17–27. *First*, conceding the other three elements for the purpose of this Motion, Lockheed claims Beltran failed to provide evidence that discrimination played a factor in the alleged adverse employment actions. *Id. Second*,

4

Lockheed asserts that even if Beltran could establish a *prima facie* case of discrimination, "he cannot rebut Lockheed[]'s legitimate nondiscriminatory reasons for Beltran's suspension and discharge." *Id.* at 18. Beltran disagrees. ECF No. 66 at 33–38.

Under Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Where direct evidence of discrimination is lacking, this court applies the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). The plaintiff under this framework bears the initial burden to establish a *prima facie* case of discrimination. *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021). If successful, "the burden of production shifts to [the defendant] to proffer a legitimate, nondiscriminatory reason for [its] action." *Id.* If the defendant meets that burden, "the presumption of discrimination disappears," and the plaintiff must produce substantial evidence indicating that the defendant's proffered reason is a pretext for discrimination. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *see also Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

Here, Lockheed argues Beltran has failed to satisfy the first step of the *McDonnell Douglas* framework because he has failed to demonstrate that discrimination had anything to do with either the December 2022 suspension or the May 2023 termination. ECF No. 62 at 17–27. In his Response, Beltran references some unrelated incidents that occurred prior to the December 2022 incident and then claims that "[t]he circumstances around Beltran's December 2022 suspension create an inference of discrimination" because "Mahaffey, who is Caucasian" had Beltran walked out by security for "request[ing] an AVO." ECF No. 66 at 34–35. Similarly, Beltran alleges "a reasonable jury could conclude that Mahaffey's walking Beltran off the flight line in March 2023 was at least partially motivated by Mahaffey's discriminatory animus towards Beltran . . . ." *Id.* at 36.

5

As a preliminary matter, the evidence is clear that Beltran was never disciplined for simply "request[ing] an AVO," but rather, for continuing to refuse work orders after being told that Lockheed no longer issues AVOs and the assignment was within his job description. Setting that aside, Beltran does not allege, and produces no evidence to show, any discriminatory comments or actions taken during either the December 2022 or March 2023 incident. *See id.* at 34–36; *see also* ECF No. 40 at 9–10. Rather, he asserts that the incidents were "at least partially motivated by Mahaffey's discriminatory animus towards Beltran." ECF No. 66 at 35–36. To show "Mahaffey's discriminatory animus," Beltran points to an alleged statement by Mahaffey[1] that Beltran was "the brown version of me" (*id.* at 35), and an incident in which Beltran was told he had to move his workstation (*id.* at 34).[2] Neither of these allegations are sufficient to show a general discriminatory animus or that discrimination played a role in the suspension or termination. The connection between the alleged animus and the adverse employment actions is even more tenuous as a both incidents were reported to a Disciplinary Review Committee ("DRC")[3] which, in both instances, made the ultimate decision regarding what the appropriate punishment should be. ECF No. 66 at 35.

Beltran also attempts to show discriminatory intent by pointing to two other Lockheed employees who share a job title with Beltran. ECF No. 66 at 35, 38. Beltran asserts that in December 2022, after he was walked out for refusing to complete a work order, another employee, Hodges (white), was assigned the task. *Id.* at 35. Beltran alleges that Hodges requested an AVO for the task and was given one. *Id.* The other employee, Bruegger (white), similarly refused to complete a task but was suspended for a month, rather than terminated. *Id.* at 37.

---

[1] Mahaffey claims he never said this. ECF No. 66 at 35 (citation omitted).

[2] Beltran testified in his deposition that the assignment of non-climate-controlled workspaces applied to all inspectors holding his job title, regardless of race. ECF No. 63-1 at 129–31, 125–26.

[3] As best the Court can tell Mahaffey is not a member of the DRC.

6

The Hodges comparison is unpersuasive for four reasons. *First*, Hodges was not issued an AVO, rather he was sent an email, which is distinct from the formal AVO form. *See* ECF No. 62 at 13–14. *Second*, Hodges had a different supervisor. ECF No. 66 at 35. *Third*, Hodges performed the task. *Id.* And *fourth*, there is no evidence Hodges had a similar disciplinary history as Beltran.[4] Consequently, the Court cannot say Hodges and Beltran were treated differently "under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citation modified).

The Bruegger comparison similarly fails. The evidence shows the first time Bruegger refused to perform a task, he received a more severe punishment than Beltran as Bruegger was suspended for a month and Beltran only five days. *See* ECF No. 66 at 3 ("Lockheed issued Beltran a five-day suspension"), 38 ("Bruegger . . . was returned to work after a month of suspension . . . ."). Additionally, there is no evidence Bruegger reoffended, as Beltran did. Therefore, Bruegger is not a proper comparator who was treated differently under nearly identical circumstances. *See, e.g., Wilkerson v. Par.*, No. 21-30716, 2025 WL 1420530, at *3 (5th Cir. May 16, 2025) (stating "a comparator, must hold the same job or hold the same job responsibilities as the Title VII claimant; must share the same supervisor or have his employment status determined by the same person as the Title VII claimant; and must have a history of violations or infringements similar to the Title VII claimant's history.") (citation modified). Accordingly, Beltran has failed to show that discrimination played any role in the relevant adverse employment actions or that he was treated differently than another similarly situated employee of a different race, ethnicity, or national origin. Consequently, the Court holds that Beltran has failed to satisfy the first step of the *McDonnell Douglas* framework and, thus, Lockheed is entitled to summary judgment on this claim.[5]

---

[4]*See* ECF No. 62 at 4–15.

[5]Additionally, and in the alternative, the Court finds Beltran has failed to provide any evidence of pretext to overcome Lockheed's proffered non-discriminatory reason—insubordination.

## B. Title VII Retaliation Claim

Next, Lockheed asserts it is entitled to summary judgment on Beltran's Title VII Retaliation Claim because Beltran did not engage in a protected activity, and he has failed to show that any protected action was the but-for causation of the adverse employment action. ECF No. 62 at 27–30. A plaintiff can establish a *prima facie* case of retaliation under Title VII by demonstrating: "(1) that []he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Plaintiffs can show they engaged in protected activity by establishing that they either: (1) "opposed any practice made an unlawful employment practice;" or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff in a Title VII retaliation claim must demonstrate but-for causation. *Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014). But-for causation in Title VII retaliation claims must be proved according to traditional principles of tort but-for causation, meaning that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Beltran asserts he engaged in protected activity on January 6, 2023, when he sent an email to Elizabeth Jelich (Lockheed's Quality director of its F-35 contract with the government) who forwarded it to Xavier Jefferson (the Senior Manager of Labor and Employee Relations for Lockheed's Fort Worth Facility and also the chair of the DRC). ECF No. 66 at 6, 39. Assuming without deciding this email qualified as a protected activity, Beltran has failed to demonstrate it was the but-for causation of his termination on May 22, 2025. Beltran argues that the "close timing" between his email and his termination provide the causal connection required under Fifth Circuit precedent. ECF No. 66 at 39–40. Specifically, Beltran claims the two events were 77 days apart which is less than the four-month time period the Fifth Circuit has found to be sufficiently close in time. *Id.* at 39. This argument fails for two reasons.

*First*, Beltran improperly bases his 77-day time period on his termination occurring on March 30, 2023. *Id.* at 40. March 30 was the day Lockheed met with Beltran to give him a chance to tell his side of the story—which he refused to do. ECF No. 63-2 at 126. But the DRC did not meet on Beltran's case until May 16, 2023, and his termination letter was sent on May 22, 2023. *Id.* at 126, 167. Thus, at a minimum, the time period was 124 days, which is outside of the four-month period cited by Beltran. *Second*, the case Beltran cites to support his four-month time period does not contain his quoted language. *See generally Raggs v. Miss. Power & Light Co.*, 278 F.3d 463 (5th Cir. 2002). In fact, the Fifth Circuit has held that "the interval must be 'very close,' and a three-to-four month gap does not suffice." *Fisher v. Bilfinger Indus. Servs. Inc.*, No. 20-30265, 2021 WL 5272214, at *2 (5th Cir. Nov. 11, 2021) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–274 (2001) (per curium); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (7th Cir. 1992)). Consequently, Beltran has failed to show that his January 6, 2023 email was the but-for causation of his May 22, 2023 termination. Accordingly, Lockheed is entitled to summary judgment on this claim.

## C. NDAA Claim

Finally, Lockheed alleges it is entitled to summary judgment on Beltran's NDAA claim because: (1) Beltran has failed to show that he made a complaint to the statutorily required individual; (2) Beltran's complaint does not contain any of the statutorily required allegations; and (3) Beltran has failed to show causation. ECF No. 62 at 30–43. Because the Court finds in favor of Lockheed on their second argument, the Court need not and will not address the others.

To succeed on a retaliation claim under the NDAA, a plaintiff must show that: (1) he engaged in a protected activity while working for a federal contractor; (2) the activity was reasonably related to the defendant's mismanaging federal funds; and (3) the activity was a contributing factor to the adverse action. *Toledo v. HCA Healthcare, Inc.*, No. CV H-19-3683, 2021 WL 4990821, at *1 (S.D. Tex. Oct. 26, 2021), *aff'd sub nom. United States ex rel. Toledo v. HCA Holdings, Inc.*, No. 21-20620, 2023 WL 2823899 (5th Cir. Apr. 7, 2023). A protected

activity is disclosing information that is reasonably believed to be evidence of a "gross mismanagement of a Federal contract . . ., a gross waste of Federal funds . . ., or a violation of law, rule, or regulation related to a Federal contract." *Id.* (citation cleaned up). And the disclosure must be to a covered person, like a managing official, who is responsible to investigate, discover, or address misconduct. *Id.* Here, Beltran alleges he engaged in a protected activity when he sent an email on January 6, 2023. *See* ECF No. 66 at 21–24. That email provides:

> Ma'am,
>
> I want to share my concerns that are affecting the performance of the Quality Inspectors. My intent is to provide you with a different perspective than what's possibly being provided to you by Flight Line Quality Leadership. The two topics below are the most recent examples of recurring issues affecting our Flight Line Quality Inspectors.
>
> 1. Quality Leadership is undermining Inspectors on documented non-conformances, specifically, Troubleshooting (T/S) Maintenance Actions (M/A). A fluid leak on BF-148, DOMMS maintenance action DOMM22338S000000002 was initiated for corrective action. Quality canceled/skipped the T/S disposition which outlined all requirements. They also removed the picture attachment in the M/A of the fluid leak and replaced the attachment with a blurred, less revealing one. Furthermore, they did not follow our T/S or Break of Inspection process and completed the M/A without investigating the leak source or allowable limits. The leak was located under a panel that requires DCMA buy-back. I was notified by a fellow Inspector who witnessed Quality Manager, John Reid, provide direction in the execution of the non-conformance on the aircraft. Please refer to the attached attachment for the M/A details.
>
> 2. Avoid Verbal Orders (AVO) — Union Leadership informed me, "Labor Relations has decided that AVO's will no longer be issued to Quality." I asked Quality Associate Manager, Michael D. Mahaffey, what's the policy on AVOs? His response was, "Per John Reid and Labor Relations, AVOs will no longer be provided." This new company policy will create problems for Inspectors as we are responsible for validating Production's procedure and policy

10

compliance. As Inspectors, our signatures indicate process and procedure compliance, and that work has been performed per planning. AVOs are documentation proving Lockheed Martin Leadership has authorized a policy or procedure variance. Without AVOs, inspectors are placed in an uncomfortable and quite possibly an unethical situation because there is no written proof of a directive that authorizes a variance to policies and procedure has been given. This leads to the case where Leadership will have the final authority and direct how and when an Inspector's signature is used. Removing AVOs will only serve to degrade trust and confidence in Leadership, because Quality Inspectors will be held liable if we do or do not follow leadership's direction to vary policies and procedures.

On a personal level, I have consistently experienced the above issues throughout my employment at LM Aeronautics Flight Line. I have been taken to Labor Relations and reassigned work locations numerous times throughout the past six years over similar concerns as above. Attempts have been made by Leadership to impede and sometimes prevent me from properly performing my Inspector duties and frequently I have been forced to defend myself formally in the execution of my assigned duties which are mandated in the Quality Inspector job description, and in the company's policies, procedures, and planning requirements. Inspectors should not have to argue a rejection or work stoppage because of **work signed for, but not performed by Production**, poor execution of planning, dismissing planning, or disregarding engineering data. These requirements are contractually mandated and paid for by our customer.

I have thought long and hard about my treatment and experiences at Lockheed Martin Aeronautics. I have witnessed countless incidents committed by other employees that called for disciplinary action, write-ups, or verbal counseling; yet these employees begin and complete their workday without any concern or fear of repercussion. My time away from work is consumed by the thoughts of these experiences.

Most recently, I was denied an AVO on an aircraft inspection, whereas soon after, another Inspector received an AVO for the same task on the same aircraft that I had

been denied the AVO. Furthermore, the same concerns were shared by production personnel who initiated an ESH Close Call for Leadership disregarding JTD safety warnings and requirements. No one else but I, experienced any disciplinary action or consequences. It is clear to me that I'm being **targeted, harassed, and discriminated against**. Many of the decisions directed towards me from leadership appear to have subtle traits of prejudice and in some cases outright hatred. For example, I recently applied for a Quality Supervisor position (617994BR) my application did not even make it through the review process. I could not even get an opportunity for an interview. One might assume that my 24-year aviation career with the US Navy, much of it focused on Quality Assurance, as well as my six years at LM as a Quality Inspector would at least warrant an opportunity to interview.

I believe the poor treatment I have received from Quality Leadership and Labor Relations is personal with the most recent example and of which you are aware, was my being placed on indefinite suspension over an "AVO" on 13 Dec 2022 with Union Leadership bringing me back to work on 21 Dec 2022. Due to this unwarranted suspension, I lost 40+ hours of pay plus the potential for overtime work. Mr. Mahaffey's decision to circumvent avionics inspection requirements and his subsequent refusal to provide me an AVO coupled with his decision to have me walked out caused me great humiliation in front of my peers. Because of Mr. Mahaffey's actions, my family and I were directly affected due to the fear of the possible loss of my employment and the resulting financial hardship. In closing I want to say that during my employment with LM I have been forced to endure this psychological stress, its impact upon my family, especially during the holidays is inexcusable.

Respectfully,

Nestor Beltran . . . .

ECF No. 67 at 89–90 (emphasis in original).

The NDAA asks whether an employee has an objectively reasonable belief that the disclosed information evidenced "such serious errors . . . that a conclusion . . . [of] err[or] is not debatable among" objectively

12

reasonable persons with knowledge of the essential facts. *White v. Dep't of Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004). In fact, "by protecting disclosures pertaining to 'gross mismanagement,' rather than ordinary mismanagement, Congress limited whistleblower protection to disclosures about particularly egregious conduct, not run-of-the-mill policy disputes between managers and employees." *Fuerst v. Hous. Auth. of City of Atlanta, Georgia*, 38 F.4th 860, 873 (11th Cir. 2022). In this case, nothing in Beltran's January 6, 2023 email establishes that Beltran reasonably believed he was making a disclosure regarding the gross mismanagement of a federal contract.

Beltran begins his email by stating "I want to share my concerns that are affecting the performance of the Quality Inspectors. My intent is to provide you with a different perspective that what's possibly being provided to you by Flight Line Quality Leadership." ECF No. 67 at 89. Beltran then goes on to describe an incident which he feels shows that "Quality Leadership" is undermining Inspectors on documented non-conformances . . . ." and his disagreement with Lockheed's decision to stop issuing AVOs. *Id.* Next, Beltran discusses the December 2022 incident and how he was denied an AVO. *Id.* at 90. Beltran concludes his letter by alleging that he is being "targeted, harassed and discriminated against" which led to him being "forced to endure this psychological stress . . . ." *Id.* Beltran argues that the following statement from his email satisfied the NDAA's requirement: "Inspectors should not have to argue a rejection or work stoppage because of **work signed for, but not performed by Production**, poor execution of planning, dismissing planning, or disregarding engineering data. These requirements are contractually mandated and paid for by our customer."[6] *Id.* (emphasis in original). But this argument fails for two reasons.

---

[6]Beltran submits no evidence to show the customer he is referring to is the government. But, looking at the evidence in the light most favorable to the non-movant, the Court assumes the customer is the government for the purposes of this Motion.

*First*, there is no evidence this cost to the customers is significant especially in light of the overall contract. *See Shea v. Mgmt. & Training Corp.*, 580 F. Supp. 3d 389, 392 (W.D. Tex. 2022) (holding that a "$3,239.25 to $13,430.00" mismanagement did not arise to the gross mismanagement of a $10.1 million contract). And *second*, viewing the statement in the greater context, the Court finds that the above statement is nothing more than Beltran's opinion regarding why Lockheed's new no-AVO policy is improper. ECF No. 67 at 89–90. Consequently, the Court finds that Beltran's January 6, 2023 email amounts to no more than "run-of-the-mill policy disputes between managers and employees" and, thus, did not trigger NDAA protections.[7] *Fuerst*, 38 F.4th at 873. Accordingly, Lockheed is entitled to summary judgment on Beltran's NDAA claim.

## CONCLUSION

For the reasons set out above, Lockheed's Motion (ECF No. 61) is **GRANTED**. It is **ORDERED** that Beltran's claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **20th day of June 2025.**

*[signature: Mark T. Pittman]*

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

---

[7] Additionally, and in the alternative, the Court finds Beltran has failed to demonstrate a material fact exists regarding whether the letter was the but-for causation of his termination.